THIS OPINION IS A
PRECEDENT OF THE TTAB

Oral Hearing: March 18, 2026                    Mailed: June 24, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Wemby Corporation*

————

Serial No. 97752244

————

Olivia M. Muller and Erik M. Pelton of Erik M. Pelton & Associates, PLLC,
    for Wemby Corporation.

Anthony Rinker, Trademark Examining Attorney, Law Office 102,
    Mitchell Front, Managing Attorney.

————

Before Wellington, Allard, and Lavache,
    Administrative Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

Wemby Corporation ("Applicant") seeks registration on the Principal Register of

the mark WEMBY (in standard characters) for "athletic apparel, namely, shirts,

pants, jackets, footwear, hats and caps, athletic uniforms," in International Class 25.[1]

---

[1] Application Serial No. 97752244 was filed on January 12, 2023 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Applicant's allegation of a bona fide intent to use the mark in commerce. On March 22, 2023, Applicant filed an Amendment to Allege Use (AAU) asserting first use of the mark anywhere on December 12, 2022, and first use in commerce on March 14, 2023. The AAU was accepted on October 6, 2023; however, on July 9, 2024, Applicant amended the application back to an intent-to-use filing basis.

Registration has been refused on two statutory grounds. First, the Examining Attorney contends that Applicant's mark falsely suggests a connection with Victor Wembanyama, a National Basketball Association (NBA) player, under Section 2(a) of the Trademark Act ("the Act"), 15 U.S.C. § 1052(a). Second, the Examining Attorney asserts that WEMBY identifies Victor Wembanyama and, absent his written consent to register the mark, registration must be refused pursuant to Section 2(c) of the Act, 15 U.S.C. §1052(c).

Prior to the Examining Attorney asserting the refusals to register Applicant's mark, a Letter of Protest, with attached evidence, was filed with the Office and granted. The Office forwarded the evidence to the Examining Attorney for consideration of a possible refusal or requirement.[2] The Letter of Protest evidence was specifically incorporated by reference by the Examining Attorney.[3] After the refusal was made final on the two grounds, Applicant filed a Request for Reconsideration, and a Notice of Appeal.[4]

Applicant's Request for Reconsideration was denied,[5] and Applicant filed an appeal brief.[6]

The Examining Attorney then filed a Request for Remand of the application file so that he could "cure" an "inadvertent deficiency" involving evidence previously

---

[2] Letter of Protest Memorandum dated October 18, 2023, with evidence attached at TSDR pp. 2-56.

[3] Office Action issued October 24, 2023, TSDR p. 2.

[4] Request for Reconsideration and Notice of Appeal (1 TTABVUE) filed on December 11, 2024.

[5] 4 TTABVUE.

[6] 8 TTABVUE.

submitted with Office Actions.[7] The request was granted, and jurisdiction was restored to the Examining Attorney,[8] who issued an Office Action with attached evidence.[9] The appeal then resumed and Applicant filed a supplemental appeal brief.[10]

The appeal has now been fully briefed.[11] On March 18, 2026, the Board held an oral hearing.[12]

We affirm both grounds for refusal—Applicant's mark falsely suggests a connection with Mr. Wembanyama, and Applicant's mark identifies Mr. Wembanyama, a living individual, without his written consent.

## I.    Evidentiary Objections

Applicant objects to certain evidence submitted by the Examining Attorney. Specifically, Applicant objects to:[13]

> … all of the Examining Attorney's evidence presented with the Office Action of October 24, 2023, and the Final Office Action of June 12, 2024, as none of the original evidence (which consists entirely of webpage screenshots) presented during the application prosecution prior to the Appeal featured the URL or the date the materials were accessed.
> …

---

[7] 14 TTABVUE 12-13. The Examining Attorney specifically requested remand of the application so that he could resubmit "screen shots or printouts of webpages" to include previously-missing "date[s] the pages were downloaded or accessed and the complete URL [of] each of the pages." 10 TTABVUE 2.

[8] 11 TTABVUE.

[9] Office Action issued on July 10, 2025.

[10] 14 TTABVUE.

[11] After Applicant's supplemental appeal brief, the Examining Attorney filed his brief (16 TTABVUE) and Applicant filed a reply brief (17 TTABVUE).

[12] *See* Oral Hearing Appearance Record, 25 TTABVUE.

[13] 14 TTABVUE 12-13.

Applicant also objects to the consideration of the evidence as reintroduced in the reissued Denial of the Request for Reconsideration from July 10, 2025. As an initial matter, the URLs listed and attachments provided by the Examiner are not organized in any way to attempt to denote which piece of Applicant's evidence they correspond to. There is no indication as to which page number of the attached evidence corresponds to which URL. While there are two pieces of evidence that feature the corresponding URL in a yellow header at the top of the page (on the evidence at pp. 8 and 13), it is clear that the order of the listed URLs in the substance of the document does not match the attachments, neither in order nor number. Furthermore, many of the URLs listed are repeated. This lack of organization makes it an extremely high effort to evaluate the Examiner's claims.

Applicant further asserts that "much of the evidence sought to be 'perfected' does not feature the same content as the original version from 2023, severely limiting its probative nature" and that "some of the original evidence was not resubmitted at all."[14]

The Examining Attorney argues in response that he properly introduced the evidence:[15]

> For every image of extrinsic internet evidence attached to the July 10, 2025, Denial of the Request for Reconsideration of the Final Refusal, the website URL and date of access is either listed in the body of the Office action, or the website URL and date of access is captured and included on the website image. Any evidence that was not reintroduced in the [July 10, 2025] Denial of the Request for Reconsideration but was included in the October 24, 2023, and June 12, 2024, Office actions was no longer available for attachment from the internet. Any differences in the formatting of the webpages that occurred between the October 24, 2023, and June 12, 2024, Office actions and the July 10, 2025, Denial of the Request for Reconsideration is not relevant, the substance and content therein is consistent.

---

[14] 14 TTABVUE 13.

[15] 16 TTABVUE 2.

As both Applicant and the Examining Attorney correctly point out in their briefs, the Board requires "the full address (URL) for the web page, and the date it was accessed or printed, either by the information displayed on the web page itself, or by providing this information in an Office action or an applicant's response," to make Internet material properly of record. TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 1208.03 (2025).

The Internet screenshots submitted by the Examining Attorney with the October 24, 2023 and June 12, 2024 Office Actions were not properly introduced because the URL (Internet address) and access date were not provided. Accordingly, Applicant's objection to this evidence is well-taken and we do not consider any of the materials attached to those Office Actions.

However, as to Applicant's objection to the materials attached to the Office Action issued on July 10, 2025, we note that the Internet addresses and access dates for these materials were provided within that Office Action.[16] Accordingly, we have considered the materials attached to this Office Action.

## II.    False Suggestion of a Connection With Victor Wembanyama

Section 2(a) of the Act, in relevant part, prohibits registration of "matter which may … falsely suggest a connection with persons, living or dead, institutions, beliefs

---

[16] We acknowledge and appreciate Applicant's point that because the URL and access date are not contained on each of the attached printouts, this makes it difficult to determine what information pertains to each submitted screenshot. Indeed, the better practice is for an examining attorney to clearly associate the URL and access date with each of the materials being submitted. This assists the applicant, and the Board, to better identify and confirm the accuracy of the materials.

or national symbols ….” 15 U.S.C. § 1052(a). To establish that a mark falsely suggests a connection with a person or an institution, we consider whether:

(1) the mark is the same as, or a close approximation of, the name or identity previously used by another person or institution;

(2) the mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution;

(3) the person or institution named by the mark is not connected with the activities performed by the applicant under the mark; and

(4) the fame or reputation of the person or institution is such that, when the mark is used with the applicant's goods or services, a connection with the person or institution would be presumed.

*In re Foster*, 136 F.4th 1090, 1094 (Fed. Cir. 2025) (“The four-part test provides a helpful framework to assess whether there is a false suggestion of a connection, but it is not an exhaustive list.”), *cert. denied*, 146 S. Ct. 191 (Oct. 6, 2025); *see also Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 1377 (Fed. Cir. 2021) (citing *In re Jackson Int'l Trading Co.*, No. 77600412, 2012 TTAB LEXIS 246, at \*4-5); *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1375-77 (Fed. Cir. 1983) (providing foundational principles for the four-element test).[17]

---

[17] The court in *Foster* observed that “evidence the mark holder intended to create a false association between his mark and the person . . . would be ‘highly persuasive’ of a false connection.” 136 F.4th at 1094 (quoting *Notre Dame*, 703 F.2d at 1377). In the related context of deceptive intent under Section 2(a), the Board has explained that “such intent is often difficult to prove and especially in ex parte proceedings,” but it may be inferred from the circumstances depending on the applied-for mark and the nature of the goods or services identified in the application. *See In re Amerise*, 1969 TTAB LEXIS 4, at \*9. While we need not consider whether any false association was intended here, we note that Mr. Wembanyama's status as a 2023 NBA first-round draft pick, the identicality between the applied-for mark and Mr. Wembanyama's nickname, and the nature of the applied-for goods (“athletic wear”) would be probative in such an inquiry.

There is no dispute that the third element is satisfied because Mr. Wembanyama is not connected with Applicant or the goods to be offered by Applicant.[18] Thus, as applied to this case, it must be shown that WEMBY is the same as, or a close approximation of, Victor Wembanyama's previously-used name or identity and would be recognized as such, in that it points uniquely and unmistakably to Mr. Wembanyama, whose fame or reputation is such that, when WEMBY is used on Applicant's goods, a connection with Mr. Wembanyama would be presumed.

## A. Whether WEMBY is the same as or a close approximation of a name previously used to identify Mr. Wembanyama

As to the first element, the Examining Attorney argues that the term WEMBY "identifies a nickname used by Victor Wembanyama, the basketball player chosen by the San Antonio Spurs NBA basketball team as the number one overall draft pick in the 2023 NBA® player draft."[19] The Board has held that "[a] nickname or an informal reference, even one created by the public, can qualify as an entity's 'identity,' thereby giving rise to a protectable interest." *Bos. Athletic Ass'n v. Velocity, LLC*, No. 91202562, 2015 TTAB LEXIS 459, at \*11 (citing *Buffett v. Chi Chi's, Inc.*, No. 68462, 1985 TTAB LEXIS 80, at \*4 n.4 ("Section 2(a) is not strictly limited to the unauthorized use of a 'name or likeness'")).

---

[18] *See* 14 TTABVUE 24 (Applicant acknowledges that "[n]othing in the record reflects that Mr. Wembanyama is associated with Applicant, [or] that Mr. Wembanyama is actually connected with the goods … at issue."). *See also* Response to Office Action filed April 24, 2023 ("Applicant has no connection to Victor Wembanyama."), TSDR p. 1.

[19] 16 TTABVUE 4.

The Examining Attorney points to evidence showing that Mr. Wembanyama "self-identif[ied] as 'WEMBY' in social media, i.e., his Instagram social media page dating back to October 13, 2020, with the user name 'wemby' with 4.7 million followers, and Victor Wembanyama's X (formerly known as Twitter) social media page used under the user name 'wemby' with 411,700 followers."[20] Screenshots submitted by the Examining Attorney include:

[21]

---

[20] 16 TTABVUE 4.

[21] Office Action issued July 10, 2025, TSDR p. 95. The red arrows and circle are supplied to illustrate use of social media handle "wemby" and the date of posting.

- 8 -


[22]

In addition to Mr. Wembanyama's use of WEMBY in social media, a Sports Illustrated article—dated November 16, 2022—describes the public anticipation of Mr. Wembanyama's entry as "widely regarded to be the consensus #1 pick in the 2023 NBA Draft" and noting that "The 'Wemby' sweepstakes will be a must-watch near the end of the [2022-2023] season."[23] Another publication, The Athletic, published—on November 19, 2022—a "Victor Wembanyama NBA Draft tracker: Scouting report, updates on the potential 2023 No. 1 pick," and lists several teams interested in drafting Mr. Wembanyama as "Wemby watchers."[24] An October 7, 2022 online article from *The Ringer*, "Is the NBA Ready for Victor Wembanyama?" begins by referring

---

[22] Office Action issued July 10, 2025, TSDR p. 96 (red circles added).

[23] Letter of Protest, entered into record on October 18, 2023, TSDR pp. 4-5.

[24] Letter of Protest, entered into record on October 18, 2023, TSDR pp. 18-22.

to Mr. Wembanyama by his full name, but then frequently identifies the player in the article as "Wemby."[25]

In addition, the following screenshot from an online article on the CBS Sports page—dated April 12, 2023—displays the following headline that associates the nickname "Wemby" with Mr. Wembanyama:[26]



**Wemby Watch: NBA's lottery odds for Victor Wembanyama are (mostly) set with 10 teams hoping for top pick**

Ten teams, from the Pistons to Mavericks, have at least a 3% chance of getting Wembanyama in June

By Sam Quinn Apr 12, 2023 at 11:38 am ET • 8 min read



.

---

[25] Letter of Protest, entered into record on October 18, 2023, TSDR pp. 25-34.

[26] Letter of Protest, entered into record on October 18, 2023, TSDR p. 36.

Although this article post-dates Applicant's January 12, 2023 filing date of its application, it is equally probative to demonstrate use of the nickname "Wemby" and shows that the media presumed familiarity with the nickname as Mr. Wembanyama's. The fact that it was published after the filing date does not diminish its probative value to show media use of "Wemby" as Mr. Wembanyama's nickname. *Foster*, 136 F.4th at 1095.

Applicant contends that the amount and type of evidence submitted by the Examining Attorney is insufficient for purposes of showing that WEMBY was used to identify Mr. Wembanyama before Applicant's filing date. Specifically, Applicant argues that its "filing [constructive use] date predates use of 'WEMBY' to identify another person," and thus it cannot be shown that it was "previously used."[27] Specifically, Applicant contends that:[28]

> Applicant's constructive date of first use is January 12, 2023, well before any significant use of "WEMBY" to refer to Mr. Wembanyama in the United States began. Based on the evidence, Mr. Wembanyama was drafted by the San Antonio Spurs in the summer of 2023, and there is scant evidence that there was any public use of the "Wemby" nickname for him before that.

Applicant also takes issue with the social media evidence, including the Instagram and X screenshots, arguing that Mr. Wembanyama was using a different handle, not "wemby," even after Applicant's filing date of January 12, 2023. For instance, Applicant submitted evidence showing that Mr. Wembanyama was using the tag

---

[27] 14 TTABVUE 14.

[28] 14 TTABVUE 15.

"@vicw_32" on X after that date.[29] In addition, Applicant asserts that "Instagram appears to retroactively update all prior posts and tags to the new username once it is changed by the account owner," thus obviating any probative value of screenshots that appear to show use of the "wemby" username on a certain date.[30] Accordingly, Applicant concludes that because usernames or handles may change over time, this "cast[s] doubt as to whether it was used to identify Mr. Wembanyama as 'Wemby' before Applicant filed the instant application."[31]

In considering Applicant's arguments on appeal, particularly those involving the sufficiency of evidence that post-dates the filing date to show "previous use" of WEMBY, we are guided by the U.S. Court of Appeals for the Federal Circuit's recent decision in *In re Foster*. In that decision, the Federal Circuit upheld the Board's affirmance of a refusal to register US SPACE FORCE for various goods and services based on a false suggestion of a connection with the United States, in particular a military branch of the United States. Like the appeal before us now, the *Foster* case involved an intent-to-use application and the record included evidence showing use of the mark both before and after the filing date of the application.[32] Specifically, as

---

[29] *See, e.g.*, Applicant's Request for Reconsideration filed December 11, 2024, at TSDR pp.18, 21.

[30] 14 TTABVUE 20, citing to evidence it attached as Exhibit B to its Request for Reconsideration filed December 11, 2024.

[31] 14 TTABVUE 20.

[32] The Federal Circuit recognized the Board's finding that the applicant in *Foster* "was not the prior user even if the application's filing date was the constructive use date" for the Section 2(a) false suggestion of a connection refusal because there was evidence to support the refusal "without considering evidence that post-dates the filing date." 136 F.4th at1092 (citing to the Board's denial of the applicant's request for reconsideration of the Board's final decision, at *In re Foster*, No. 87981611, 2022 TTAB LEXIS 465).

the Court noted, and in terms of "previous use," the record showed that, only six days before the applicant's filing date, "in a speech covered by the national media, President Donald J. Trump [in his first term] proposed the formation of a sixth military branch to cover space operations called the 'Space Force.'" 136 F.4th at 1092.

As a preliminary matter in *Foster*, the Federal Circuit focused on the appropriate "timing" for assessing a false suggestion of a connection refusal—and held that, in the context of an ex parte appeal, "§2(a) bars registration of a pending application for a mark that falsely suggests a connection as of the time of examination. The false connection inquiry can therefore include evidence that comes into existence during the examination process." 136 F.4th at 1093 (explaining the holding was "for consistency" with cases holding that evidence in connection with other refusals to register can be considered through, for example, "the date of the Board's decision") (quoting *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1354–56 (Fed. Cir. 2010)). The Federal Circuit went on to acknowledge, with approval, the Board's reliance on both evidence "pre-dating the application's filing date," as well as evidence "post-dating the application's filing date," and ultimately concluded that there was "substantial evidence supporting the Board's finding regarding the first factor [of the four-part legal test]." 136 F.4th at 1095.

Here, the circumstances are quite similar to those in *Foster* in that the record is clear that WEMBY was "previously used" to identify Mr. Wembanyama. That is, the record includes news articles from four different notable sources—*Sports Illustrated*, *The Ringer*, *The Athletic*, and CBS Sports — that use WEMBY to refer to Mr.

Wembanyama. *See Foster*, 136 F.4th at 1094-95. These articles reflect the public attention accorded to Mr. Wembanyama at that time and indicate an excitement for the upcoming 2023 NBA season and potential sensation he would make as a top draft pick.

Accordingly, we find WEMBY is a nickname previously used to identify Mr. Wembanyama, the NBA basketball player.[33]

### B. Whether WEMBY points uniquely and unmistakably to Mr. Wembanyama

The Examining Attorney refers to the record and asserts that "the term 'WEMBY' … uniquely and unmistakably point[s] to Victor Wembanyama."[34] Applicant focuses its argument on the timing of the evidence showing that this nickname has come to be associated with the NBA player.

As previously discussed, under *Foster*, we may consider all evidence submitted "during the examination process." 136 F.4th at 1093. Here, the entirety of the evidence shows that WEMBY is associated with Mr. Wembanyama and this is borne out by the previously-mentioned pre-2023 evidence as well as more recent evidence from notable sources. For example, in the *USA Today Sports* "HoopsHype" online

---

[33] To be clear, we make this finding of use of WEMBY prior to Applicant's filing date without relying on the social media evidence, including printouts from X and Instagram. Nevertheless, the social media evidence is probative for purposes of showing that WEMBY was adopted by Mr. Wembanyama as a social media handle as of the date the screen shots were captured.

[34] 16 TTABVUE 6.

article "NBA Twitter reacts to Wemby's 27-point second Summer League game," his nickname is repeated:[35]



Other examples of WEMBY being used to refer to Mr. Wembanyama and his notoriety include the following from the Bleacher Report:[36]

---

[35] Article dated July 9, 2023; attached to Office Action issued July 10, 2025, at TSDR p. 5 (red circles added).

[36] Website screenshot with an X social media posting dated October 20, 2023 (red arrow and circle added); attached to Office Action issued July 10, 2025, at TSDR p. 17.



Accordingly, based on the entire record, we find WEMBY is a well-recognized nickname that points uniquely and unmistakably to Mr. Wembanyama.

### C. Whether Mr. Wembanyama's fame or reputation is such that, when WEMBY is used with athletic apparel, including shoes and uniforms, a connection with Mr. Wembanyama would be presumed

Because Mr. Wembanyama, known as "Wemby," is a famous NBA basketball player and Applicant's goods include athletic apparel such as shoes and uniforms, there is an obvious and inherent connection between the person and the goods. Indeed, the record corroborates this connection and clearly shows NBA basketball players are closely associated with such goods. *See Foster*, 136 F.4th at 1094 (noting that the nature of the goods may be helpful in a false connection analysis). To wit, Mr. Wembanyama, referred to as "Wemby," was in the news for wearing a new, unreleased Nike shoe as he threw the first pitch at Yankee Stadium:[37]

---

[37] Excerpt from San Antonio news website KENS5 (www.kens5.com) (red circle added); attached to Office Action issued July 10, 2025, at TSDR p. 9.



*Rolling Stone* also noted the marketing and success of athletic uniforms (jerseys) bearing Mr. Wembanyama's name:[38]



---

[38] Excerpt from *Rolling Stone* website (www.rollingstone.com); attached to Office Action issued July 10, 2025, at TSDR p. 10.

The *Rolling Stone* article contains information regarding prices and where to purchase the jerseys, while noting the excitement surrounding "Wemby's" addition to the NBA and touting his skills:

> Wemby's addition to San Antonio is of course a cause for celebration among Spurs fans, but it's also thrilling for anyone interested in <u>basketball</u>. Standing seven-foot-four, Wembanyama is considered <u>the best NBA draft since LeBron James</u> — if not *ever*. He's played professionally in Europe since the age of 15, and now, at 19, he's poised to dominate the world's premier basketball league.

Given Mr. Wembanyama's demonstrated fame as an NBA player and his inherent and demonstrated relationship with athletic apparel like that described in the application, we find that consumers would presume a connection with Mr. Wembanyama upon encountering use of WEMBY on these goods.

## D. Conclusion

Applicant's proposed mark, WEMBY, falsely suggests a connection to Mr. Wembanyama, a famous NBA basketball player. The proposed mark is identical to Mr. Wembanyama's nickname and thus points uniquely and unmistakably to Mr. Wembanyama. Due to Mr. Wembanyama's fame as an NBA player, the public would mistakenly believe that there exists a connection with him should WEMBY be used by Applicant on athletic apparel and uniforms, as identified in the application. Again, there is no dispute that Mr. Wembanyama is not associated with Applicant.

Accordingly, based on the record in this appeal, we find that Applicant's mark WEMBY falsely suggests a connection with Mr. Wembanyama, as prohibited under Section 2(a) of the Act.

### III. Lack of Written Consent of a Particular Living Individual

Section 2(c) of the Act absolutely prohibits registration of a mark that "[c]onsists of or comprises a name … identifying a particular living individual except by his written consent … ." 15 U.S.C. § 1052(c). The provision "protects the reputation of the named individual by preventing another person from using his name." *Vidal v. Elster*, 602 U.S. 286, 306 (2024) (internal quotation marks omitted). For purposes of Section 2(c), the "name" does not have to be the full name of an individual, "but also first names, surnames, shortened names, pseudonyms, stage names, titles, or nicknames, if there is evidence that the particular name identifies a specific living individual who is publicly connected with the business in which the mark is used, or who is so well known that such a connection would be assumed." *In re ADCO Indus.-Techs, L.P.*, No. 87545258, 2020 TTAB LEXIS 7, at *22. And, "[w]hether consent to registration is required depends on whether the public would recognize and understand the mark as identifying a particular living individual." *Id.* at *21.

Accordingly, "the Board has set forth two ways to show that a 'name' identifies a particular living individual for purposes of Section 2(c): 1) if the person is so well known that the public would reasonably assume the connection, or 2) if the person is publicly connected with the business in which the mark is being used." *Mystery Ranch, Ltd. v. Terminal Moraine, Inc.*, No. 91250565, 2022 TTAB LEXIS 418, at *44 (citing *M/S R.M. Dhariwal (HUF) 100% EOU v. Zarda King Ltd.*, No. 91231033, 2019 TTAB LEXIS 95, at *21).

Based on the record, particularly the evidence already discussed in the context of the Section 2(a) refusal, we find the nickname WEMBY identifies Mr. Wembanyama in both ways articulated in *Mystery Ranch*. First, Mr. Wembanyama's fame as the 2023 NBA first draft pick, and reference to him as "Wemby" is such that the public would reasonably assume a connection between Applicant's WEMBY mark and Mr. Wembanyama.

Second, he has also been publicly associated with goods identified in the application, including his debut of a new Nike shoe and the sale of sports apparel bearing his name. Applicant's submission of a specimen of use illustrates one possible manner in which a WEMBY mark may appear on athletic footwear:[39]



It is also common knowledge that the NBA is a professional sports league and business that is well-known for marketing athletic apparel, including shoe endorsements, as borne out by the *Rolling Stone* article (shown above) discussing "Victor Wembanyama's Spurs Jerseys … Flying Off the Shelves." Thus, as an NBA

---

[39] Specimen submitted with Applicant's AAU, filed on March 22, 2023. As noted, the AAU was subsequently withdrawn (see Note 1).

basketball player, Mr. Wembanyama is "publicly connected" with the business of Applicant's identified athletic apparel and footwear.[40]

For the aforementioned reasons, we find Applicant's proposed mark, WEMBY, identifies a particular living individual, Mr. Wembanyama, whose written consent is not of record and therefore the refusal to register the mark on this basis must be affirmed under Section 2(c) of the Act.

**Decision:**

The refusal to register Applicant's proposed mark is affirmed under Section 2(a) of the Act based on a false suggestion of a connection with Victor Wembanyama, and under Section 2(c) of the Act based on the proposed mark identifying a particular living individual, Mr. Wembanyama, without his written consent.

---

[40] Applicant also argues that Section 2(c) of the Act is inappropriate here because "this entire record indicates that any public recognition of 'Wemby' as a nickname for Mr. Wembanyama occurred after Applicant's filing date." 14 TTABVUE 23. However, there is no timing component within Section 2(c) of the Act. In any event, as discussed above in the context of the Section 2(a) ground for refusal, there is evidence demonstrating WEMBY was recognized as a nickname for Mr. Wembanyama prior to Applicant's filing date.